**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| KOREAN AMERICAN BROADCASTING COMPANY, INC., KM COMMUNICATIONS, INC., and KM LPTV OF CHICAGO-28, LLC, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 09 C 6665 |
| KOREAN BROADCASTING SYSTEM and KBS AMERICA, INC., | ) ) ) | |
| Defendants. | ) | |

**<u>MEMORANDUM OPINION</u>**

Before the court is the motion of KBS America, Inc. to dismiss the Second Amended Complaint.  For the following reasons, the motion is granted in part and denied in part.

**<u>BACKGROUND</u>**

This is a diversity action brought by KM LPTV of Chicago-28, LLC ("Channel 28"), Korean American Broadcasting Company, Inc., and KM Communications, Inc., against Korean Broadcasting System ("KBS") and KBS America, Inc. ("KBS America").  The facts of this case, as alleged by plaintiffs, are set out in our previous memorandum opinion and will not be repeated here.  <u>See</u> <u>Korean Am. Broad. Co.</u> <u>v. Korean Broad. Sys.</u>, No. 09 C 6665, 2010 WL 3075566, at *1-3 (N.D. Ill. Aug. 4, 2010).  In that opinion, we granted KBS America's motion to dismiss the First Amended Complaint and

dismissed all of plaintiffs' claims, some with prejudice and some without. We gave plaintiffs leave to file a Second Amended Complaint, and they did so. The Second Amended Complaint contains four counts: violation of the Illinois Franchise Disclosure Act (Count I); common-law fraud (Count II); negligent misrepresentation (Count III, pled in the alternative); and civil conspiracy (Count IV).

KBS America now moves to dismiss the Second Amended Complaint.

## DISCUSSION

The purpose of a Rule 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to resolve the case on the merits. 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356, at 354 (3d ed. 2004). Under federal notice-pleading standards, a complaint need not contain "detailed factual allegations," but it must have more than mere "labels and conclusions." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A plaintiff is obligated to provide the factual grounds of his entitlement to relief, and a "formulaic recitation" of the elements of a claim will not do. Id. The complaint must contain sufficient facts to raise a plaintiff's right to relief above a "speculative" level, id. at 555, and the claim must be "plausible on its face," id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." <u>Ashcroft v. Iqbal</u>, --- U.S. ----, ----, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). When evaluating a motion to dismiss a complaint, we must accept as true all factual allegations in the complaint, but not its legal conclusions. <u>Id.</u> at 1949-50.

## A.    **Illinois Franchise Disclosure Act (Count I)**

The Illinois Franchise Disclosure Act (the "Franchise Act") provides a civil cause of action for damages caused by the termination of, or failure to renew, a franchise in violation of the statute. 815 ILCS 705/26. The Franchise Act states in relevant part:

> Nonrenewal of a franchise. It shall be a violation of this Act for a franchisor to refuse to renew a franchise of a franchised business located in this State without compensating the franchisee either by repurchase or by other means for the diminution in the value of the franchised business caused by the expiration of the franchise where:
> . . .
> (b) the franchisee has not been sent notice of the franchisor's intent not to renew the franchise at least 6 months prior to the expiration date or any extension thereof of the franchise.

815 ILCS 705/20. The statute defines a "franchise" as a contract or agreement that has certain enumerated characteristics. 815 ILCS 705/3(1).

In our previous opinion, we dismissed Channel 28's Franchise Act claim without prejudice because it failed to adequately specify which agreement or agreements allegedly created a franchise; the

allegations that the "agreements between KBS, KBS America and Channel 28, including but not limited to the expired written agreement" granted Channel 28 a franchise and that Channel 28 "is a franchise of KBS and/or KBS America" did not give defendants adequate notice of the claim. We instructed plaintiffs that if they were alleging that there was some other agreement in addition to the written agreement that created a franchise, "they should expressly allege that." 2010 WL 3075566 at *11.

Channel 28's amended allegations are as follows:

61. There had been the agreements between KBS, KBS America and Channel 28, such as the first written agreement, the written agreement attached and the oral agreement upon expiration of the written agreement. Such agreements granted Channel 28 the right to engage in the business of distributing KBS and KBS America's services under a system prescribed in substantial part by KBS and KBS America.

62. The operation of Channel 28 was substantially associated with KBS and KBS America's intellectual property and commercial symbols designating the content as KBS'.

63. The payments made by Channel 28 to KBS and KBS America constituted franchise fees in excess of $500.00.

64. Accordingly, Channel 28 is a franchise of KBS and/or KBS America.

(Second Am. Compl. ¶¶ 61-64 (citations to exhibits omitted).)

Defendants argue that these allegations still fail to give them adequate notice of the claim. We disagree. It is true that paragraph 61 is awkwardly phrased ("there had been the agreements," "such agreements"), but we will construe "such" as meaning "these,"

and thus that Channel 28 is alleging that 3 agreements created a franchise: (1) the January 2005 agreement that is written in Korean, Exhibit 2 to the Second Amended Complaint; (2) the July 2005 agreement that is written in English, Exhibits 3 and 4 to the Second Amended Complaint (the "Agreement"); and (3) the oral agreement alleged in paragraph 36 of the Second Amended Complaint. The allegation is sufficient to put defendants on notice of which agreements are claimed to have created a franchise.

As for the allegation that Channel 28 is a franchise "of KBS and/or KBS America," there are no facts set forth that allow us to so infer as to KBS. A franchise is an agreement. Each of the three agreements is alleged to have been entered into by a plaintiff or plaintiffs with KBS America, not KBS; KBS is merely alleged to be the parent company of KBS America. The Franchise Act claim will therefore be dismissed as to KBS. The dismissal will be with prejudice because we see no prospect of successful amendment, especially considering that this is plaintiffs' third go-around with respect to the complaint.

KBS America contends that Count I should be dismissed for the additional reason that Channel 28 "admits" in the complaint that it broadcast defendants' programming with AT&T U-Verse and later with Comcast, and thus that it breached the Agreement, and both the Franchise Act and the Agreement give KBS America the absolute right to terminate the contract in the event of the other party's breach.

We previously rejected this argument and indicated that it would be more appropriately asserted as an affirmative defense. KBS America insists that plaintiffs have now pled additional facts "which admit definitively" that Channel 28 broadcast the programming in breach of the Agreement, Def.'s Mot. at 9, but it mischaracterizes and overstates plaintiffs' allegations. The Second Amended Complaint does not clearly show that this claim is barred by KBS America's defense, so Count I will not be dismissed as to KBS America.

**B.    Common-Law Fraud (Count II)**

Count II is a common-law fraud claim in which plaintiffs allege that defendants, though KBS America's then-CEO Kevin Kwon, misrepresented that "once Plaintiffs obtained basic cable carriage, a new license agreement would be entered into between the parties wherein no license fee would be paid and the parties would profit through a split of the relevant advertising revenues to be gained . . . ." (Second Am. Compl. ¶ 70.)

"To state a fraud claim under Illinois law, a plaintiff must allege that the defendant: (i) made a false statement of material fact; (ii) knew or believed the statement to be false; (iii) intended to and, in fact, did induce the plaintiff to reasonably rely and act on the statement; and (iv) caused injury to the plaintiff." Reger Dev., LLC v. National City Bank, 592 F.3d 759, 766 (7th Cir. 2010) (citing Redarowicz v. Ohlendorf, 441 N.E.2d 324, 331 (Ill. 1982)). Rule 9(b) requires plaintiffs to plead with

particularity the factual bases for averments of fraud, including "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." Hefferman v. Bass, 467 F.3d 596, 601 (7th Cir. 2006); see also DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir. 1990) (stating that a plaintiff must plead the who, what, when, where, and how of the alleged fraud).

Plaintiffs' claim is for promissory fraud, which is not actionable in Illinois unless the plaintiff alleges that the statement was part of a scheme to defraud. Ass'n Benefit Servs., Inc. v. Caremark Rx, Inc., 493 F.3d 841, 853 (7th Cir. 2007). "The scheme exception applies where a party makes a promise of performance, not intending to keep the promise but intending for another party to rely on it, and where the other party relies on it to his detriment." Bower v. Jones, 978 F.2d 1004, 1011 (7th Cir. 1992) (internal quotation marks omitted). "[P]romissory fraud is actionable only if it either is particularly egregious or, what may amount to the same thing, it is embedded in a larger pattern of deceptions or enticements that reasonably induces reliance and against which the law ought to provide a remedy." Desnick v. American Broad. Cos., 44 F.3d 1345, 1354 (7th Cir. 1995).

We previously dismissed plaintiffs' common-law fraud and negligent misrepresentation claims because plaintiffs failed to

allege even a single misrepresentation with sufficient particularity, much less a larger pattern of deceptions. Plaintiffs have again amended the complaint and rely on an oral promise made by Mr. Kwon on two occasions--in April 2004 and May 2006--that once plaintiffs gained basic cable carriage, their monthly fee would be waived.  They also rely on a number of statements by Mr. Kwon that can only be described as "puffery, bragging, 'mere words,' and casual bonhomie," which do not reasonably induce reliance, see Desnick, 44 F.3d at 1354.  (Second Am. Compl. ¶ 70 ("[I]t was of great importance that KBS World programming be aired on basic cable rather than as part of a premium cable package"; KBS America "wanted Plaintiffs to jointly be the procuring force which would obtain the broadcast of KBS World content on Illinois cable television carriers"; "KBS America's goal of achieving nationwide coverage for its station would dovetail with Plaintiffs' goal of distributing Korean language content"; "[T]he parties would enjoy a long, fruitful and mutually-beneficial relationship").)

The alleged conduct still does not rise to the level of a pattern of fraudulent acts.  Plaintiffs merely allege one promise, repeated twice, that was broken, which does not amount to the "elaborate artifice of fraud," Desnick, 44 F.3d at 1355, that is required by the Seventh Circuit and Illinois law.  The alleged puffery fails to elevate these promises to a "scheme" because we are unable to infer any fraudulent intent from these statements.

Furthermore, no facts are set forth from which we can infer that Kwon, on behalf of KBS America, made the promise to waive the monthly fee without intending to keep it, as opposed to Kwon or his successors at KBS America changing their minds. (In fact, plaintiffs allege that defendants claimed a "change of company policy," Second Am. Compl. ¶¶ 39, 49.) "A change of mind can be a breach of contract, but it is not fraud." Bower, 978 F.2d at 1012 (ellipsis omitted); see also Doherty v. Kahn, 682 N.E.2d 163, 176 (Ill. App. Ct. 1997) (holding that plaintiff had insufficiently pled facts to show the existence of a scheme and noting that there were no facts alleged indicating that at the time of the alleged misrepresentations, there was an intent not to perform them), abrogated on other grounds by Byung Moo Soh v. Target Mktg. Sys., 817 N.E.2d 1105 (Ill. App. Ct. 2004); Stunfence, Inc. v. Gallagher Security (USA), Inc., No. 01 C 9627, 2002 WL 31109456, at *2 (N.D. Ill. Sept. 20, 2002) (dismissing fraud claim for failure to plead specific facts showing an intent not to perform at the time of the alleged misrepresentations and noting that "[a]ll [plaintiff] has offered are allegations of misrepresentations and a possible motive for making them. Without requiring more, every claim for misrepresentation could also be a claim for fraud."). We can infer fraudulent intent where a breach of a promise occurs so close to a promise that the only possible inference is that the promisor never intended to keep it, Sa'Buttar Health & Med., P.C. v. TAP Pharm.,

Inc., No. 03 C 4074, 2004 WL 1510023, at *4 (N.D. Ill. July 2, 2004), but here it is alleged that two to three years elapsed before it became evident through the statements of Kwon's successors that KBS America was not going to waive the franchise fee after plaintiffs obtained cable carriage. Illinois law does not allow plaintiffs "to proceed on a fraud claim when the evidence of intent to defraud consists of nothing more than unfulfilled promises and allegations made in hindsight." Ass'n Benefit Servs., 493 F.3d at 853.

Plaintiffs' allegations fall short of stating a promissory fraud claim. Accordingly, Count II will be dismissed. This time, the dismissal will be with prejudice; plaintiffs have had ample opportunities to state a claim.

## C.   Negligent Misrepresentation (Count III)

In Count III, plaintiffs assert a claim for negligent misrepresentation in the alternative to their fraud claim, based on the same statements. As KBS America points out, a negligent misrepresentation claim does not fit the alleged facts: how could it be that Kwon would be "negligent" in ascertaining his own intent to keep the promise to waive the monthly fee? But more significantly, except in actions involving physical harm, Illinois law limits liability for negligent misrepresentation to situations where the defendant is in the business of supplying information for the guidance of others in their business transactions and therefore

owes a duty to the plaintiff. See <u>Tyler v. Gibbons</u>, 857 N.E.2d 885, 888-89 (Ill. App. Ct. 2006); <u>Krieger v. Adler, Kaplan & Begy</u>, No. 94 C 7809, 1996 WL 6540, at *5 (N.D. Ill. Jan. 5, 1996). The Second Amended Complaint includes a boilerplate allegation that defendants owed plaintiffs a duty to communicate accurate information, but no facts that support this legal conclusion. Plaintiffs' allegations suggest nothing more than an arm's-length business relationship among the parties. There appears to be no prospect of successful amendment, so Count III will be dismissed with prejudice.

**D.    Civil Conspiracy (Count IV)**

Count IV alleges that defendants conspired to defraud plaintiffs and to interfere with plaintiffs' relationship with Comcast in the manner alleged in the counts that we have dismissed for failure to state claims. Because that conduct would not amount to an actionable conspiracy, Count IV will be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, defendant KBS America, Inc.'s motion to dismiss the Second Amended Complaint [54] is granted in part and denied in part. The motion is granted as to the Franchise Act claim of KM LPTV of Chicago-28 against Korean Broadcasting System in Count I, and that claim is dismissed with prejudice. The motion is also granted as to Counts II, III, and IV, which are

- 12 -

dismissed with prejudice.  The motion is denied as to the Franchise Act claim of KM LPTV of Chicago-28 against KBS America, Inc. in Count I; this is the sole remaining claim in the action.

A status hearing is set for June 22, 2011 at 11:00 a.m.


DATE:        June 9, 2011


ENTER:       _____

John F. Grady, United States District Judge